**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **MAG. NO. 20-85 (GMH)** |
| | : | |
| **MARK CRAWFORD,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(A), 18 U.S.C. § 3142 (f)(1)(D), 18 U.S.C. § 3142 (f)(1)(E) and 18 U.S.C. § 3142 (d)(1)(A)(iii) of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**I.   Procedural History**

The defendant is charged by criminal complaint with one count Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1) and one count of Assault on a Police Officer While Armed, in violation of 22 D.C. Code 405 (c) and 4502.   At today's initial appearance, the government intends to orally move for detention pending trial pursuant to the above-referenced provisions of the federal bail statute, and any additional provisions that may apply upon review of the Pretrial Services Agency report.   Upon agreement with the defense and in light of the current national public health emergency related to COVID-19, the government

intends to immediately proceed to the detention hearing.

## II.   Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).   Specifically, the presentation of hearsay evidence is permitted.   Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery.   Smith, 79 F.3d at 1210, see also Williams, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.   See 18 U.S.C. § 3142(g).   A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. See 18 U.S.C. § 3142(e)(1).

### A.   Nature and Circumstances of the Offenses Charged

On Tuesday, May 12, 2020, at approximately 1:47 p.m., members of the Metropolitan Police Department (MPD) 6th District were dispatched to the 100 block of 35th Street Southeast in

Washington, D.C. for a report of a barred individual walking in the area. The 911 caller provided a description of the barred individual as a black male in his early 20's, 5 feet 7 inches tall, long dreads with gold tips, dark complexion, dark clothing, by the name of Mark Collins. Officers Morton responded to the area along with Officer Jeremy Jones.   The officers were wearing full police uniforms and responded in marked patrol vehicles. Officer Morton observed an individual, later identified as the defendant, Mark Crawford, standing in front of 3424 A Street Southeast with some other individuals. Officer Morton approached the defendant because he matched the description provided by the caller, including the long dreads with gold tips. Officer Morton stopped the defendant and attempted to investigate the complaint.   Officer Morton asked the defendant if he was Mark Collins, and the defendant stated that he was not.   The defendant was asked multiple times to provide his name and he refused and would not provide any identification.

The defendant was evasive and combative as officers attempted to question him and determine if he was the barred individual.   Officers attempted to pat him down and he broke free from the officers and attempted to flee on foot. The defendant was apprehended a short distance away and a struggle between the officers and the defendant ensued. The defendant continued to struggle and resist the efforts of the officers to place him in handcuffs.   Because of how the defendant was struggling, the officers were not able to get both of his hands behind his back and secure them in one set of handcuffs.   The officers were able to use two (2) pairs of handcuffs linked together to restrain the defendant.   They restrained one arm behind his back in one set of cuffs and one arm in front of him in another set of cuffs, and then linked the two empty cuffs together.   Once handcuffed, the defendant continued to struggle with the officers as they attempted to lift him from the ground and stand him upright.

While he was being lifted up, the defendant was able to retrieve a firearm from his front waistband with his right hand and fire one round. The gunshot struck Officer Jeremy Jones in the left thigh area.   As the defendant attempted to make his escape, he fired a second gunshot, which did not take effect. The defendant was quickly apprehended. As Officer Morton regained control of the defendant, Officer Morton observed the defendant using his right hand to toss a dark colored firearm under a parked vehicle. The defendant was secured and placed under arrest. The firearm was also secured and recovered.

The firearm that was recovered was determined to be a Glock 43 .9mm caliber semiautomatic handgun with a serial number of BDXX887.   When it was examined, a spent shell casing was found in the chamber and twelve (12) rounds of .9mm ammunition were found in an unknown capacity extended magazine.   Additionally, one (1) shell casing was located in the street a few feet from the original struggle.   A WALES/NCIC check of the firearm revealed that it was reported stolen to the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF) in Greensboro, North Carolina on November 5, 2018.

Officer Jeremy Jones was taken to a nearby hospital to be treated for the gunshot wound caused by the defendant.   He suffered a broken left femur and will require surgery to remove the projectile from behind his kneecap.

**B.**      **Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention.   The evidence against the defendant is extremely strong.   The defendant came to the attention of law enforcement when he substantially matched the description of a suspect that was barred from the subject location.   Upon responding to the location, the defendant became

uncooperative and combative with law enforcement and was placed in cuffs.   The defendant then produced a firearm and shot an MPD officer, seriously injuring the officer.   The defendant was observed with the firearm and was observed discarding the firearm.   The firearm was recovered and one (1) spent shell casing was found in the chamber and twelve (12) rounds of .9mm ammunition were found in the extended magazine.   Additionally, one (1) shell casing was located in the street a short distance away from where the defendant engaged in the struggle with law enforcement.

### C.      The Defendant's History and Characteristics

The third factor, the history and characteristics of the person, similarly weigh in favor of detention.   The defendant's criminal conduct has remained undeterred as evidenced by his consistent contacts with the criminal justice system for the past several years. Furthermore, the government is concerned that the instant alleged conduct represents an escalation to extremely violent conduct. The defendant has the following prior convictions:

- Conspiracy to Commit Carjacking/Possession Intimidation (Maryland, 2009)
- Conspiracy to Commit Armed Carjacking (Maryland, 2009)
- Carjacking (Maryland, 2010)

The government submits that the defendant should not be released.

### D.      Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention.   The Complaint alleges that while a prohibited from owning or possessing a firearm, the defendant shot and injured an MPD Officer while he was being detained by law enforcement.   At the time that the defendant

5

discharged the firearm, it was in the early afternoon hours of the day, and there were numerous other members of law enforcement that could have been injured, as well as innocent civilian bystanders.   Importantly, the defendant discharged the firearm twice, but thankfully the second gunshot did not strike anyone.

Moreover, at the time of the charged offense, the defendant was (and remains) on supervised release in Maryland case number CT090076A, in relation to a conviction for Conspiracy to Commit Carjacking/Possession/Intimidation.   The defendant was sentenced to fifteen (15) years of imprisonment, with seven and a half (7.5) years suspended, followed by five (5) years of supervised probation.   The defendant's supervision commenced on March 29, 2017 and is scheduled to terminate on March 28, 2022.   The government was unable to obtain compliance information prior to the filing of this pleading.

The defendant's criminal history is notable for violent felony offense. Additionally, the defendant now has a pending case in D.C. Superior Court, case number 2020 CF3 4650, with charges of First Degree Burglary While Armed (Gun) and Assault with a Dangerous Weapon (Gun) relating to incidents that occurred on different dates and involving different complaining witnesses.   On May 13, 2020, the defendant was presented on these charges, and D.C. Superior Court Judge Staples found probable cause on the charges and detained the defendant pending trial. A felony status conference is scheduled for July 8, 2020 at 9:30 A.M, before D.C. Superior Court Associate Judge O'Keefe.   For these reasons, the government submits that the Court should order the defendant's detention during the pendency of this case to protect the community.

E.   **COVID-19 REPRESENTATIONS**

The government anticipates that the defendant will also request release because of the

COVID-19 Coronavirus (COVID-19) that is currently affecting the nation. The government believes that the defendant will argue that the D.C. jail is ill-equipped to handle the pandemic. The U.S. Attorney's Office has been in consultation with the DOC in light of the rapidly-changing situation.   As of the filing of this pleading, the government has been advised that the total number of positive persons at the D.C. jail is approximately 176, and all have been placed in quarantine consistent with CDC guidelines.[1]   Reportedly, 129 inmates have recovered from the virus.

As this Court knows, the D.C. Public Defender Service and the D.C. American Civil Liberties Union sued DOC in the U.S. District Court. That case is stylized as *Banks v. Booth* and is assigned to Judge Colleen Kollar-Kotelly. The plaintiffs allege various failures by the DOC to protect inmates. On April 17, 2020, the government indicated that it would not oppose DOC's motion to join the U.S. Attorney's Office as a defendant. On April 19, 2020, Judge Kollar-Kotelly granted in part and denied in part the plaintiffs' request for injunctive relief (*Banks v. Booth*, 20-cv-849 (CKK), at 1 (D.D.C. Apr. 19, 2020) (hereinafter "Mem. Op.").

The *Banks* opinion supports the government's position that the jail's response to the COVID-19 pandemic does not necessitate the release of detainees at this juncture. The Court rejected the plaintiffs' request for prisoner release and/or the appointment of a downsizing expert (Mem. Op. at 26). Instead, it ordered the further implementation of polices to better address the health and safety of the current inmate population, as recommended by court-appointed *amici (id.* at 27-31). Informing its decision <u>not</u> to release any prisoners or even to appoint a downsizing expert, were the steps taken by the D.C. Superior Court to reduce the prisoner population and the fact that inmates will continue to be assessed for release on an individualized basis (*id.* at 26–27;

---

[1]  This number is likely to change as more tests are conducted.

*see also supra* n. 3).

The *Banks* opinion anticipates DOC compliance with its mandate. The *Banks* litigation is still at an early stage, as should be clear from the Court's detailed, 31-page memorandum opinion. The Court stated that it expected that "additional development of the record may show that Defendants are taking sufficient precautions and that Defendants' response continues to evolve" (Mem. Op. at 22).   The government has every expectation that DOC will comply with the Court order, and in the next few days and weeks, DOC's protocols will be implemented consistent with the Court's mandate.[2] Among the relief the Court ordered was that inmates be "provid[ed] consistent and reliable access to legal calls, personal telephone calls, daily showers, and clean clothing and clean linens to all inmates on isolation status" (Mem. Op. at 29). All parties have an interest in ensuring the safety and security of inmates, regardless of the danger or flight risk they represent, and the *Banks* Court will continue to monitor DOC compliance.   Thus, the court-ordered remediation measures should be expected to improve conditions at the jail.

The precautionary and sanitation measures ordered by the *Banks* Court (Mem. Op. at 27–31) can be expected to compliment those already undertaken by correctional authorities. On April 1, 2020, DOC provided the *Banks* Court with information including all relevant written procedures and practices concerning COVID-19, particularly related to legal visits and communication. 20-cv-849, ECF No. 19. In addition, the government directs the Court to additional documents filed in that active litigation, including: ECF No. 20-1 (Declaration of Lennard Johnson); ECF No. 20-2 (Declaration of Beth Jordan); ECF No. 25 (Defendants' Opposition to Plaintiffs' Application for

---

2  As noted by the government's Response to the D.C. Defendants' Motion to Join the United States as a Necessary Party, 20-cv-849 (ECF No. 46), the government does not operate or have authority over the D.C. Central Detention or Correctional Treatment Facility, and thus cannot address or alter inmates' conditions of confinement at those facilities.

a Temporary Restraining Order); and ECF No. 25-2 (List of DOC Supplies).   At least one Court has noted that the conditions of the detention facilities are currently the subject of *Banks*, and "the Court has confidence that the D.C. Department of Corrections, which oversees those facilities, will do everything it can to comply with that order so as to prevent the further spread of the virus to its residents and staff." *United States v. Sagastume-Galicia*, 20-cr-40, at *10 (BAH) (D.D.C. April 22, 2020) (ECF No. 10). The Court in fact referred to its own decision in *Banks* in *United States v. Riggins*, 20-cr-10 (CKK) (D.D.C. April 27, 2020), denying release for a mildly asthmatic defendant in a firearms case, noting that the *Banks* Temporary Restraining Order "requires the Department of Corrections to step up its ongoing attempts to implement precautions aimed at stemming the spread of COVID-19 cases within their facilities." *Id.* at *13 ("While the conditions discussed in *Banks* are concerning, so too are the other facets of [the defendant's] relevant history.").

All parties have an interest in ensuring the safety and security of inmates, regardless of the danger or flight risk they represent. And the Court's memorandum opinion takes this duty seriously. Assuming the *Banks* allegations are true, without an exhaustive evidentiary body produced by DOC, the *Banks* Court clearly anticipates change. Thus, the conditions at the jail will only get better. The Bail Reform Act and the individualized factors should continue to guide the detention analysis. At this stage, given the current handling of the civil case as well as the record and proffer in this case, this Court should detain the defendant pending trial.

There is nothing right now that suggests the defendant's particularized health necessitates his release. The defendant stands accused of very serious felony offenses, including his alleged shooting of an MPD officer.   The defendant also now has a number of pending violent crime

charges involving multiple victims, in D.C. Superior Court.   This clearly shows the defendant's danger to the community at large.   The defendant must be detained pending trial.

**III.   <u>Conclusion</u>**

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

TIMOTHY J. SHEA
UNITED STATES ATTORNEY
D.C. Bar No. 437437

By:      /s/ Lisa N. Walters
Lisa N. Walters
D.C. Bar No. 974-492
Assistant United States Attorney
Violent Crime and Narcotics Trafficking Section
United States Attorney's Office for D.C.
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
E-mail: Lisa.Walters@usdoj.gov
Telephone: (202) 252-7499

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel, Shelli Peterson, this 14th day of May, 2020.

_____/s/_____
Lisa N. Walters
Assistant United States Attorney